UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DANIEL G. KAMIN,                                   )
    *Plaintiff*,                                )
                                                  )
    *vs.*                                      )    1:13-cv-01593-JMS-TAB
                                                  )
TRAVELERS CASUALTY AND SURETY                      )
COMPANY f/k/a THE AETNA CASUALTY AND               )
SURETY COMPANY,                                    )
    *Defendant*.                               )

## ORDER[1]

Presently pending before the Court are a Motion to Dismiss on the Basis of Res Judicata filed by Defendant Travelers Casualty and Surety Company f/k/a The Aetna Casualty and Surety Company ("Travelers"), [Filing No. 6], and Travelers' Request for Oral Argument on its motion to Dismiss on the Basis of Res Judicata, [Filing No. 8]. For the reasons that follow, the Court denies Travelers' Motion to Dismiss. The parties' briefs afforded the Court an adequate basis on which to rule without the assistance of oral argument. The Court therefore denies Travelers' Request for Oral Argument, [Filing No. 8].

### I.
### THE COMPLAINT ALLEGATIONS

**A. The 2009 IDEM Complaint**

Plaintiff Daniel Kamin owns the Eastbrook Plaza Shopping Center, located at 25th Street and National Road in Columbus, Indiana (the "Site"). [Filing No. 1-1, at ECF p. 4.] On December 17, 2009, the Indiana Department of Environmental Management ("IDEM") informed

---

[1] As part of the Court's pilot program regarding hyperlinking in Court filings, this Order contains hyperlinks to documents previously filed in this case and to legal authority. Instead of the citation format "dkt. __ at __," the Court now uses "Filing No. __, at ECF p. __" as its citation format.

Mr. Kamin and one of his companies, the Kamin Realty Company ("Kamin Realty"), that a dry cleaning solvent called Tetrachloroethene, or PCE, had been discovered in the groundwater along the boundaries of the Site (the "2009 IDEM Complaint"). [Filing No. 1-1, at ECF p. 6.] IDEM demanded that Mr. Kamin and Kamin Realty investigate the extent of the contamination, and Mr. Kamin and Kamin Realty complied. [Filing No. 1-1, at ECF p. 6.] On December 7, 2012, Mr. Kamin and Kamin Realty advised IDEM that they did not believe they were liable for further investigation, or for remediation of the Site. [Filing No. 1-1, at ECF p. 6.] Mr. Kamin and Kamin Realty advised IDEM that it should exercise its enforcement authority against the former owner of the Site, Indiana Realty Fund 1971, LP ("Indiana Realty") and its general partner, Kenneth Heugel. [Filing No. 1-1, at ECF p. 6.]

### B. Efforts to Ascertain Applicable Insurance

After receiving the 2009 IDEM Complaint, Mr. Kamin and Kamin Realty began "an investigation to ascertain the historical insurance for the Site." [Filing No. 1-1, at ECF p. 7.] The investigation revealed several insurance companies that had sold insurance policies to Mr. Kamin and/or his companies insuring the Site. [Filing No. 1-1, at ECF p. 7.] On December 14, 2010, coverage counsel for Mr. Kamin and Kamin Realty contacted the insurers they had identified in their investigation and requested that the insurers defend and indemnify Mr. Kamin and Kamin Realty in connection with the 2009 IDEM Complaint. [Filing No. 1-1, at ECF p. 7.] Mr. Kamin and Kamin Realty also requested copies of any evidence of liability or property policies from those insurers. [Filing No. 1-1, at ECF p. 7.] As of December 14, 2010, Mr. Kamin and Kamin Realty had "been unable to locate evidence identifying Travelers as an entity that insured the Site." [Filing No. 1-1, at ECF p. 7.] Subsequently, however, two insurance

agents that had been involved in issuing policies covering the Site informed Mr. Kamin and Kamin Realty that a Travelers entity had insured the Site. [Filing No. 1-1, at ECF pp. 7-8.]

Coverage counsel for Mr. Kamin and Kamin Realty contacted Travelers on December 21, 2010, requesting a defense and indemnity in connection with the 2009 IDEM Complaint and evidence of any policies issued by Travelers. [Filing No. 1-1, at ECF p. 8.] On December 22, 2010, Travelers acknowledged receipt of a letter from one of the insurance agents which had identified Travelers as an insurer of the Site, and stated that it would search for "any potentially applicable policies, or any other information respecting policies we may have issued to Kamin." [Filing No. 1-1, at ECF p. 8.] On December 28, 2010, Travelers acknowledged receipt of a letter from Mr. Kamin and Kamin Realty. [Filing No. 1-1, at ECF p. 8.] Travelers did not, however, provide Mr. Kamin, Kamin Realty, or their coverage counsel with any policies or evidence of policies at that time. [Filing No. 1-1, at ECF p. 8.]

### C.  The April 2012 Lawsuit by Travelers Against Mr. Kamin and Kamin Realty

On April 2, 2012, Travelers and several affiliated Travelers companies filed suit against Mr. Kamin and Kamin Realty in the United States District Court for the Western District of Pennsylvania, Cause No. 2:12-cv-00422-AJS (the "First Coverage Action"). [Filing No. 1-1, at ECF p. 8.] In the First Coverage Action, Travelers and its related entities sought a declaratory judgment on specific policies identified in the complaint, but did not seek a coverage determination on Policy Number 27 SM 1059437 FCS, which covered the Site from September 15, 1986 through September 15, 1987 (the "86-87 Policy"). [Filing No. 1-1, at ECF p. 9.]

On November 30, 2012, after failing to reach a settlement, the parties filed a Stipulation for Dismissal "without prejudice and without interest and costs to any party" in the First Coverage Action. [Filing No. 1-1, at ECF p. 9.] The court dismissed the First Coverage Action

that same day.  [Filing No. 1-1, at ECF p. 9.]  The Travelers entities did not disclose the existence of the 86-87 Policy during the First Coverage Action.  [Filing No. 1-1, at ECF p. 9.]

### D.  The 2013 IDEM Notice

On July 9, 2013, IDEM sent a Special Notice of Potential Liability and Request for Information (the "2013 IDEM Notice") to Mr. Kamin.  [Filing No. 1-1, at ECF p. 6.]  The 2013 IDEM Notice requested certain information regarding the Site, informed Mr. Kamin that he must conduct additional activities at the Site until IDEM determines that he is not further responsible, and threatened civil penalties for noncompliance.  [Filing No. 1-1, at ECF p. 6.]  IDEM sent a similar notice to Indiana Realty and Mr. Heugel.  [Filing No. 1-1, at ECF p. 6.]

### E.  Mr. Kamin's Lawsuit Against Indiana Realty and Mr. Heugel

On July 22, 2013, Mr. Kamin filed suit against Indiana Realty and Mr. Heugel in the United States District Court for the Southern District of Indiana, Cause No. 1:13-cv-1169-JMS-TAB (the "Indiana Realty Lawsuit"), seeking damages and a declaration that Indiana Realty and Mr. Heugel are liable for Mr. Kamin's costs arising from the 2009 IDEM Complaint and the 2013 IDEM Notice.  [Filing No. 1-1, at ECF pp. 6-7.]  Indiana Realty and Mr. Heugel filed counterclaims against Mr. Kamin in the Indiana Realty Lawsuit.  [Filing No. 1-1, at ECF p. 7.]

### F.  Mr. Kamin and Kamin Realty Learn of the 86-87 Policy

Mr. Kamin and Kamin Realty learned of the existence of the 86-87 Policy in September 2013, when counsel for Indiana Realty and Mr. Heugel provided a copy of it to coverage counsel for Mr. Kamin and Kamin Realty.  [Filing No. 1-1, at ECF p. 10.]

### G.  The Instant Lawsuit

On September 10, 2013, Mr. Kamin filed this lawsuit against Travelers in Marion Superior Court.  [Filing No. 1-1, at ECF pp. 4-14.]  Travelers removed the lawsuit to this Court

on October 4, 2013 based on diversity jurisdiction. [Filing No. 1.] Mr. Kamin seeks a declaration that the 86-87 Policy obligates Travelers to defend and indemnify Mr. Kamin for the 2009 IDEM Complaint, the 2013 IDEM Notice, and Indiana Realty's and Mr. Heugel's counterclaims in the Indiana Realty Lawsuit, [Filing No. 1-1, at ECF p. 10]. Mr. Kamin also asserts a claim for breach of good faith and fair dealing by "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue," "failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," "refusing to pay claims without conducting a reasonable investigation based upon all available information," "making an unfounded refusal to pay policy proceeds," "causing an unfounded delay in making payment," "deceiving the insured," and "exercising any unfair advantage to try to pressure an insured into a settlement of his claim." [Filing No. 1-1, at ECF pp. 11-12.] In the motion presently pending before the Court, Travelers has moved to dismiss all of Mr. Kamin's claims against it based on the doctrine of res judicata. [Filing No. 6.]

## II.
### STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its fact." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A complaint will likely be found sufficient under the plausibility requirement if it gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Alternatively, a plaintiff's claim will be found insufficient if he "plead[s] facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir.

5

2011).  When evaluating the sufficiency of a complaint for the purposes of a motion to dismiss, the Court must "construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the non-movant's] favor." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

## III.
### DISCUSSION

Although res judicata is an affirmative defense, *Harrison v. Deere & Co.*, 533 Fed. Appx. 644, 647 (7th Cir. 2013), dismissal is appropriate "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous…," *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).  *See also* *Woods v. Wells Fargo Fin. Bank*, 753 F.Supp.2d 784, 789 (S.D. Ind. 2010) ("Under certain circumstances, res judicata can justify the dismissal of a complaint for failure to state a claim").

Where the prior litigation was brought in federal court, the federal rule of res judicata applies to whether the doctrine bars this suit.  *In re Energy Cooperative, Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987).  Under federal law, "[t]o apply the doctrine of res judicata, three elements must exist: (1) judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action between both suits."  *Brzostowski v. Laidlaw Waste Sys.*, 49 F.3d 337, 338 (7th Cir. 1995).

### A.  Judgment on the Merits in an Earlier Action

First, Travelers argues that there was a final judgment on the merits in the First Coverage Action because the case was dismissed with prejudice.  [Filing No. 7, at ECF p. 19.]  Travelers submits the order dismissing the First Coverage Action with prejudice, [Filing No. 7-5], and asserts that the Court can consider public court documents in ruling on a motion to dismiss, [Filing No. 7, at ECF p. 11].  Mr. Kamin alleges in the Complaint that the parties in the First

Coverage Action filed a stipulation for dismissal without prejudice, and that the court dismissed the First Coverage Action that same day. [Filing No. 1-1, at ECF p. 9.] In his response to the Motion to Dismiss, however, he does not dispute that the dismissal was with prejudice or that it constituted a final judgment on the merits. [Filing No. 11.] Accordingly, by failing to address it, Mr. Kamin has waived any argument that dismissal of the First Coverage Action was not a judgment on the merits. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument – as [Mr. Kamin has] done here – results in waiver").

In any event, the Court may consider the dismissal order in the First Coverage Action, which indicates that dismissal was "with prejudice," [Filing No. 7-5]. *See Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th Cir. 2008) ("We may take judicial notice of documents in the public record…without converting a motion to dismiss into a motion for summary judgment"); *Matthews v. Capital One Ban*k, 2008 U.S. Dist. LEXIS 90157, *6-7 (S.D. Ind. 2008) ("[f]ederal courts can take judicial notice of the decisions of both federal and non-federal courts"). A dismissal with prejudice constitutes a final judgment on the merits. *Scott v. Durham*, 2010 U.S. Dist. LEXIS 117295, *12 (N.D. Ind. 2010). Accordingly, the Court finds that the first requirement for application of the doctrine of res judicata is satisfied.

### B. Identity of Parties

Second, Travelers argues that there is identity of the parties or their privies between this action and the First Coverage Action because Mr. Kamin is the plaintiff in this case and was a defendant in the First Coverage Action. [Filing No. 7, at ECF p. 12.] Travelers also contends that if Kamin Realty and Daniel G. Kamin Eastbrook Enterprises (the "Kamin Trust") "are, or become, pertinent to this case, both entities are in privity with Kamin sufficient to create an

identity of interests, and thus, to satisfy [this] element of the res judicata doctrine." [Filing No. 7, at ECF p. 13.]

Mr. Kamin does not address this requirement of res judicata, and thus has waived any argument that there is not identity of parties. *See Bonte*, 624 F.3d at 466. In any event, the Court finds that identity of the parties exists here. Mr. Kamin is the plaintiff in this litigation and was a defendant in the First Coverage Action, and Travelers is the defendant in this litigation and was a plaintiff in the First Coverage Action. The second requirement for the application of res judicata is satisfied.

### C. Identity of the Causes of Action

The final requirement for the application of res judicata – identity of the causes of action – is where the parties disagree. Travelers argues that the First Coverage Action and this matter are "based on the same 'core of operative facts,'" because both actions "arise out of Kamin's request for insurance coverage regarding the ongoing investigation and remediation of the environmental contamination at the Site and 'are based on the same, or nearly the same, factual allegations.'" [Filing No. 7, at ECF p. 15.] Travelers asserts that Mr. Kamin's "nearly identical" claim in this litigation under the 86-87 Policy could have, and should have, been raised in the First Coverage action, and that Mr. Kamin cannot avoid res judicata by advancing a bad faith claim because it is based on the "'same single core of facts.'" [Filing No. 7, at ECF pp. 17-19.]

Mr. Kamin responds that, as to his bad faith claim, it does not involve any of the policies at issue in the First Coverage Action, any of Travelers' actions related to those policies, or any of the underlying claims at issue in either action. [Filing No. 11, at ECF p. 7.] Instead, he argues, the bad faith claim is primarily based on Travelers' failure to disclosure the 86-87 Policy in the First Coverage Action, which Mr. Kamin did not learn about until nine months after the First

Coverage Action ended.  [Filing No. 11, at ECF p. 7.]  As to his coverage claim, Mr. Kamin contends that res judicata does not apply because the claim is based on a different policy, which Mr. Kamin did not know existed at the time of the First Coverage Action.  [Filing No. 11, at ECF pp. 8-11.]  He notes that the 86-87 Policy – unlike the policies at issue in the First Coverage Action – was purchased by Indiana Realty and Mr. Heugel, and Mr. Kamin became an insured only through a policy endorsement.  [Filing No. 11, at ECF p. 10.]  Mr. Kamin also argues that he only sought coverage for the 2009 IDEM Complaint in the First Coverage Action, and here he seeks coverage for the 2013 IDEM Notice and the Indiana Realty Lawsuit as well.  [Filing No. 11, at ECF p. 11.]  Finally, Mr. Kamin asserts that the claims in this lawsuit were not foreseeable during the First Coverage Action, and that dismissing his claims will encourage bad faith. [Filing No. 11, at ECF pp. 12-14.]

Travelers argues in its reply that both the First Coverage Action and this lawsuit are based on Mr. Kamin's "request for insurance coverage regarding the ongoing investigation and remediation of the environmental contamination at the Site."  [Filing No. 12, at ECF p. 3.]  It also asserts that the 2009 IDEM Complaint and the 2013 IDEM Notice are not separate but are both part of the same investigation, and that the Indiana Realty Lawsuit also arises out of "the same core facts."  [Filing No. 12, at ECF p. 4.]  Travelers contends that it was Mr. Kamin's responsibility to identify insurance policies that might provide coverage, and that it is not Travelers' fault that Mr. Kamin did not include the 86-87 Policy in the First Coverage Action. [Filing No. 12, at ECF p. 6.]  Travelers argues that it would not have discovered the 86-87 Policy when responding to inquiries from Mr. Kamin in the First Coverage Action because the 86-87 Policy was not issued to him or to Kamin Realty.  [Filing No. 12, at ECF p. 7.]  Accordingly, Travelers argues, it did not intentionally withhold the 86-87 Policy and Mr. Kamin's bad faith

claim must really relate to his "request for insurance coverage related to the clean-up of the Site, and Travelers['] actions in response." [Filing No. 12, at ECF pp. 7-10.]

The Seventh Circuit Court of Appeals has instructed that "[w]hile the traditional formulation is that a claim is barred by res judicata if it emerges from the same 'core of operative facts' as a previously litigated matter,…we have recently, attempting to draw a brighter line, suggested that 'two claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations.'" *Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, 31 F.3d 445, 447 (7th Cir. 1994)* (quoting *Herrmann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993)). As discussed below, the Court finds that the requisite identity of the causes of action in the First Coverage Action and this lawsuit does not exist at this stage of the litigation.

### 1. The Coverage Claim

As to Mr. Kamin's coverage claim, that claim undisputedly involves a policy that was not at issue in the First Coverage Action. Claims asserted under the 86-87 Policy are separate and distinct from claims made under the policies at issue in the First Coverage Action for purposes of res judicata. *See Andersen v. Chrysler Corp.*, 99 F.3d 846, 854 (7th Cir. 1996) (denying motion to dismiss based on res judicata in part because second lawsuit related to coverage under different benefit plan from that challenged in earlier cases; *Am. Nat'l Fire Ins. Co. v. Harold Abrams, P.C.*, 2002 U.S. Dist. LEXIS 2577, *22 n.18 (N.D. Ill. 2002) (res judicata did not bar second lawsuit because, among other reasons, second lawsuit involved different insurance policy than first and the policies provided different coverage). The Court also does not find the possibility that the 86-87 Policy may provide similar coverage to the policies at issue in the First Coverage Action relevant and, in any event, cannot determine whether that is even the case at the

motion to dismiss stage where the specific policies at issue in the First Coverage Action are not attached to the Complaint in this case or otherwise properly before the Court. *See, e.g., Owners Ins. Co. v. Chadd's Lake Homeowners Ass'n, Inc.*, 2006 U.S. Dist. LEXIS 40859, *11 (N.D. Ga. 2006) (declining to apply res judicata where second lawsuit was based on different insurance policy insurer issued to different insured, despite the fact that the policies were "substantially identical").[2]

Additionally, the First Coverage Action related to the 2009 IDEM Complaint only, whereas in this lawsuit Mr. Kamin seeks coverage under the 86-87 Policy for the 2009 IDEM Complaint, the 2013 IDEM Notice, and the Indiana Realty Lawsuit. [Filing No. 1-1, at ECF 10 (alleging that the 86-87 Policy "obligates Travelers to defend and indemnify Mr. Kamin for the IDEM Suits and the [Indiana Realty Lawsuit]").] Travelers argues that the 2009 IDEM Complaint and the 2013 IDEM Notice "involve a single, ongoing IDEM Claim," and that the Indiana Realty Lawsuit "also arises out of the same core facts – that IDEM is requiring [Mr.] Kamin…to remediate the Site." [Filing No. 12, at ECF p. 4.] At the motion to dismiss stage, the Court must take the allegations in the Complaint as true, *Reger Dev., LLC*, 592 F.3d at 763, and the Complaint characterizes each of those matters as separate, [*see, e.g.*, Filing No. 1-1, at ECF pp. 6-7 (after receiving notice of the 2009 IDEM Complaint, Mr. Kamin "complied and conducted various investigative activities, as required by IDEM" and "[o]n December 7, 2012, Kamin informed IDEM that Kamin did not believe it was liable for the further investigation and,

---

[2] The Court also finds it significant that this matter involves a policy originally issued to cover Indiana Realty, which changed the name of the insured by endorsement to "Daniel G. Kamin aka Eastbrook Plaza." [Filing No. 1-1, at ECF p. 10.] It appears from the allegations of the Complaint that the First Coverage Action related to policies originally issued to Mr. Kamin or Kamin Realty. [*See* Filing No. 1-1, at ECF pp. 8-9 (Travelers stated it would search for "'any potentially applicable policies, or any other information respecting policies we may have issued to Kamin,'" and then filed suit against Mr. Kamin and Kamin Realty "on specific policies, which they identified in the complaint").]

if necessary, the remediation of the Site"; IDEM sent the 2013 IDEM Notice to Mr. Kamin which required him to "conduct additional activities at the Site until IDEM determines that Mr. Kamin is not a Responsible Person"; and Mr. Kamin initiated the Indiana Realty Lawsuit claiming that Indiana Realty and Mr. Heugel are liable for Mr. Kamin's "costs arising from the IDEM Suits," and Indiana Realty and Mr. Heugel filed counterclaims against Mr. Kamin)]. Based on the Complaint allegations, the coverage claims in this lawsuit are more extensive than the coverage claims in the First Coverage Action.

Further, again taking the allegations in the Complaint as true, Mr. Kamin only learned of the existence of the 86-87 Policy on August 23, 2013, [Filing No. 1-1, at ECF p. 10], which was long after the First Coverage Action was over. Accordingly, the Court finds that, based on the allegations of the Complaint, Mr. Kamin could not have been expected to assert claims under the 86-87 Policy in the First Coverage Action.

### 2. *The Bad Faith Claim*

Based on the allegations in the Complaint, Mr. Kamin's bad faith claim focuses on Travelers' alleged failure to disclose the 86-87 Policy in the First Coverage Action. [*See, e.g.*, Filing No. 1-1, at ECF p. 12 (alleging Travelers is liable for bad faith for "fail[ing] to conduct a reasonable and timely investigation of the historical policies issued to Kamin at the Site," "refus[ing] to provide Kamin with copies of the requested policies," "refus[ing] to timely inform Kamin of the [86-87 Policy]," and "intentionally deceiv[ing] Kamin by filing suit and never disclosing the [86-87 Policy]").] As alleged, the bad faith claim is sufficiently distinct from the claims asserted in the First Coverage Action such that the doctrine of res judicata does not bar

that claim.[3]  Additionally, like his coverage claim under the 86-87 Policy, Mr. Kamin cannot

have been expected to bring the bad faith claim in the First Coverage Action because he did not

yet know that Travelers allegedly had not identified or produced the 86-87 Policy.

In sum, dismissal of this matter is not warranted under the doctrine of res judicata

because, taking the allegations of the Complaint as true as the Court must at the motion to

dismiss stage, the claims asserted in this litigation are separate and distinct from the claims

asserted in the First Coverage Action.  The Court notes, however, that this decision does not

preclude consideration of the res judicata issue later in this litigation, should discovery reveal

that the facts relevant to that issue are significantly different than the allegations in the

Complaint.

## IV.
### CONCLUSION

For the foregoing reasons, Travelers' Motion to Dismiss, [Filing No. 6], is **DENIED**, and

Travelers' Request for Oral Argument, [Filing No. 8], is **DENIED**.

**Distribution via ECF only to all counsel of record**

---

[3] The Court rejects Travelers' characterization of the bad faith claim as brought under "a slightly different legal theory" than the claims in the First Coverage Action.  [Filing No. 7, at ECF p. 18.] As discussed, the bad faith claim is based on Travelers' alleged failure to disclose the 86-87 Policy, which Mr. Kamin did not know existed during the First Coverage Action.  This is a distinct claim from those asserted in the First Coverage Action, not just a claim based on a "slightly different legal theory."  *Cf. Brenston v. Dedelow*, 2005 U.S. Dist. LEXIS 32663, *15-16 (N.D. Ind. 2005),* cited by Travelers (holding res judicata barred second lawsuit for civil rights violations under respondeat superior theory where first lawsuit involved direct claims for civil rights violations and both lawsuits related to plaintiff's eviction from his home).